**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CRAIG K. DELIGDISH,**

    **Plaintiff,**

**v.**                                                    **Case No: 6:17-cv-438-Orl-31DCI**

**BIO-REFERENCE LABORATORIES,**
**INC.,**

    **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 25) filed by the Defendant, Bio-Reference Laboratories, Inc. (henceforth, "BRL"), and the response in opposition (Doc. 28) filed by the Plaintiff, Craig Deligdish ("Deligdish").

**I.**      **Background**

According to the allegations of the Amended Complaint (Doc. 17), which are accepted in pertinent part as true for purposes of resolving the instant motion, BRL bought Florida Clinical Labs, Inc. (henceforth, "Florida Clinical") in 2012 by way of a stock purchase agreement (henceforth, the "Agreement"). (Doc. 17 at 2). Deligdish was one of the two shareholders of Florida Clinical.[1] (Doc. 17 at 2).

At the time of the sale, Florida Clinical had roughly $1 million in accounts receivable. Under the terms of the Agreement, BRL held back $1 million of the $7 million purchase price against the possibility that some portion of the receivables would not be paid within one year.

---

[1] Subsequently, the other shareholder assigned his rights under the Agreement to Deligdish. (Doc. 17 at 3).

BRL also agreed to pay $150,000 beyond the basic purchase price if Florida Clinical maintained its existing business relationship with Blue Cross and Blue Shield of Florida for a designated period after the sale.  (Doc. 17 at 3).  In addition, Deligdish and the other Florida Clinical shareholder had initiated plans for a laboratory expansion, which was anticipated to result in approximately $1.5 million in municipal tax incentives.  (Doc. 17 at 2).  BRL agreed to pursue the tax incentives and to pay a portion[2] of any such incentives received to the Florida Clinical shareholders.  (Doc. 17 at 2-3).

After the sale closed, Deligdish says, BRL failed to make all the payments it was obligated to make under the Agreement.  (Doc. 17 at 4).  Specifically, Deligdish contends that BRL only paid approximately $500,000 of the $1 million accounts receivable holdback, despite actually collecting roughly $700,000, and that BRL also failed to make reasonable efforts to collect the receivables.  (Doc. 17 at 4).  Deligdish also contends that BRL failed to pay the full $150,000 bonus payment for Florida Clinical maintaining its relationship with BCBS of Florida.  (Doc. 17 at 5).  And finally, Deligdish alleges that BRL breached a requirement in the Agreement that it not voluntarily disclose the fact that the purchase had occurred, and that this breach led the municipal authorities to refuse to approve the tax incentives.  (Doc. 17 at 5).

**II.   Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a

---

[2] The Amended Complaint does not disclose the precise amount to be paid.

claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Analysis

### A. Breach of Contract

In Count I of the Amended Complaint, Deligdish attempts to assert a claim for breach of contract. BRL makes several arguments that Deligdish has failed to state a claim in Count I, none meritorious. First, BRL asserts that Count I should be dismissed because Deligdish "has not identified, and cannot identify, an express provision of the Agreement that [BRL] breached." (Doc. 25 at 6). According to its terms, the Agreement is governed by New Jersey law. (Doc. 2-1 at 41). BRL has not cited to any provision of New Jersey law requiring that a plaintiff explicitly identify the precise provision of the contract that was breached in order to state a claim. Under New Jersey law, a cause of action for breach of contract exists when the plaintiff can demonstrate three things: a valid contract, defective performance by the defendant, and resulting damages. *See, e.g., Zelnick v. Morristown-Beard School*, 137 A.3d 560, 566 (N.J. Sup. Ct. Law Div. 2015). In Count I, Deligdish alleges several instances of defective performance by BRL, such as a failure to pay over all of the holdback amount that was due to the Florida Clinical shareholders. (Doc. 17 at 4). This is sufficient to allege a breach, even without identifying the contract provision(s) requiring such payment.

BRL next contends that it was under no obligation to make any effort to collect the receivables, much less the "commercially reasonable efforts" that Deligdish contends were required, and therefore Deligdish's allegations that it failed to do so are insufficient to state a claim. (Doc. 25 at 7). But it must be noted that the failure to make "commercially reasonable" collection efforts is just one of several alleged breaches asserted in Count I, a number of which have not been challenged by BRL. For instance, Deligdish asserts that BRL retained too much of the $1 million holdback because it did not account for all of the receivables it actually collected.

(Doc. 17 at 4).   BRL does not dispute that such action on its part would constitute a breach.  Accordingly, even if one disregards the alleged failure to make proper collection efforts, the allegations of Count I are sufficient to allege a breach of the Agreement.

Turning to the issue of reasonable collection efforts, BRL's argument does not hold up.  BRL asserts that the shareholders "expressly represented [in the Agreement] that the amount of collectable cash for such accounts receivable, <u>without collection efforts or litigation</u>, was $1,008,161."   (Doc. 25 at 7) (emphasis in original).   But the section of the Agreement cited by BRL for this proposition, Section 3.1(jj), actually asserts that the amount of collectable cash "**utilizing commercially reasonable efforts** consistent with past practice … is $1,008,161."  (Doc. 2-1 at 21) (emphasis added).   To the same end, Section 10.3(a)(x) of the Agreement requires the shareholders to indemnify BRL in the amount

> by which cash collections (without litigation and without collection efforts **other than those that are commercially reasonable** and consistent with past practice) respecting Accounts Receivable outstanding as of the Closing Date which have been received by FCL within Twelve (12) months after the Closing Date, falls short of $1,008,161.

(Doc. 2-1 at 36) (emphasis added).   Clearly, the parties to the Agreement intended that BRL do something more than just sit back and watch the checks come in.

Section 10.1 of the Agreement prohibited any party from making public disclosure of the sale without the consent of the others.   (Doc. 2-1 at 35).   BRL is alleged to have violated this prohibition by filing a copy of the Agreement with the SEC.   (Doc. 17 at 2).   However, Section 10.1 contained an exception for any announcements "required by law or judicial or regulatory process."   (Doc. 2-1 at 35).   BRL argues that the disclosure to the SEC falls within this exception, and therefore the disclosure was not a breach.   (Doc. 25 at 8).   However, Deligdish has asserted in the Amended Complaint that the disclosure "was not otherwise mandated or

required by law to be disclosed."  (Doc. 17 at 5).   At this stage of the proceedings, the Court is required to accept Deligdish's assertion as true.   Based on that assumption, the disclosure constituted a breach.

Accordingly, the Court finds that Deligdish has stated a claim for breach of contract in Count I.

### B.     Breach of the implied covenant of good faith and fair dealing

In Count II, Deligdish attempts to assert a claim for breach of the covenant of good faith and fair dealing.   Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing.   *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997) (citing cases).   In essence, the implied covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."   *Palisades Properties, Inc. v. Brunetti*, 207 A.2d 522, 522 (N.J. 1965) (citing 5 Williston on Contracts § 670, at 159-60 (3d ed. 1961).

BRL first argues that because Deligdish's good faith claim is grounded in his "purported contractual expectations," it is barred by the economic loss doctrine, which prohibits recovery in tort of economic losses where the entitlement flows only from a contract.   However, as noted above, under New Jersey law the implied duty of good faith and fair dealing arises from the contract itself.   Because of this, a claim for breach of that duty sounds in contract, not tort, and therefore it is not subject to the economic loss doctrine.  See *Dando v. Bimbo Foods Bakeries Distribution, LLC*, Civil No. 14-2956, 2017 WL 1362022, at *3 (D.N.J. April 10, 2017).   BRL cites several cases that reach the opposite result.   However, all but one of the cases involve *pro se* litigants attempting to avoid foreclosure on their homes, and the Court employing the economic loss doctrine to dispose of numerous claims at once.   None of the cases cited by BRL actually

analyzes the intersection between the economic loss doctrine and the implied contractual duty of good faith and fair dealing.

BRL makes two other arguments in regard to Count II: first, that Deligdish has failed to assert a breach of the Agreement, and second, that Deligdish is improperly trying to alter the Agreement's terms so as to impose an obligation to utilize "commercially reasonable collection efforts." (Doc. 25 at 11-15). Both of these arguments have already been considered and rejected in connection with Count I. Accordingly, the Court finds that Deligdish has also stated a claim in Count II.

### IV.     Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 25) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 28, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party